UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADA YEAGER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF SEATTLE, a municipal corporation,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**<br><br>**JURY DEMAND** |

## INTRODUCTION

Plaintiff Ada Yaeger is an unhoused resident of Seattle. Since early June, she has been living in the protest encampment located at Cal Anderson Park. Yeager and the members of her community have been subjected to repeated harassment from the City of Seattle by way of "sweeps" -- a coordinated destruction and taking of personal property of unhoused citizens by Seattle Parks and Recreation and Seattle Police, two departments controlled and funded by Defendant City of Seattle. As the COVID-19 pandemic reaches a new crisis point in Seattle, shelters and transitional housing are all full or nearly full. Established tent encampments are the only safe option for Plaintiff and similarly-situated community members. The protest encampment at Cal Anderson is unique in that it not only functions as safe place for Yaeger to

Yeager v. City of Seattle, Case No.
COMPLAINT – Page 1 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, Washington 98201
Phone (425) 259-4989 Fax (425) 259-5994

MAZZONE LAW FIRM, PLLC
3002 COLBY AVE.
EVERETT, WA 98201
T: (425) 259-4989

live and access resources, but it is also a platform for political organizing and expression. On December 14, 2020, the Defendant gave fewer than 48-hours notice that they will again sweep the Cal Anderson protest encampment, yet again causing irreparable harm to Yeager and similarly situated people, including: warrantless seizure and destruction of personal property, uprooting and displacing the city's most vulnerable community, sending police to arrest and brutalize already traumatized individuals, and chilling Constitutionally-protected expressions and assembly, all in blatant violation of due process of law and crystal clear CDC standards for the prevention of COVID transmission among unhoused people. Yeager seeks vindication of her rights by restraint of Defendant's planned sweep until it can be done in a way that is lawful and safe.

## I. PARTIES

1.1 Plaintiff Ada Yaeger (hereinafter "Plaintiff") is a resident of the protest encampment located at Cal Anderson Park, in Seattle, Washington.

1.2 Defendant City of Seattle (hereinafter "Defendant City") is a municipal corporation organized under the laws of the State of Washington.

## II. JURISDICTION AND VENUE

2.1 This action is brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

2.2 This Court has jurisdiction of these claims pursuant to 28 U.S.C §§ 1331 and 1343.

*Yeager v. City of Seattle*, Case No.
COMPLAINT – Page 2 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, Washington 98201
Phone: (425) 259-4989 Fax (425) 259-5994

2.3   Venue is appropriate in the U.S. District Court, Western District of Washington at Seattle, pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in this district and the Defendant exists in this district.

### III.   FACTS

3.1   Cal Anderson park, located on Capitol Hill in Seattle, has been the site of a near-continuous protest encampment since the George Floyd Uprising began in late May, 2020.

3.2   Plaintiff has lived at the Cal Anderson protest encampment since early June, 2020, Yeager Declaration at 1, far longer than the 14-days required to establish a Homestead under Washington state law (RCW 6.13-.15, Washington State Constitution, Article 19).

3.3   The protest encampment has been a hub of political activity, forming the staging ground for daily marches and constant political organizing. Yeager Declaration at 1-2.

3.4   Although the political messages expressed at the protest encampment are diverse, one common political message is criticism of Defendant City's police force and policies toward the homeless. Eby Declaration at 1.

3.5   The protest encampment at Cal Anderson is also one of many places in Seattle where unhoused people live collectively on public property in an attempt to meet survival needs, including: shelter, food, water, sanitation, medical care, and mental health care.

3.6   The protest encampment at Cal Anderson is also a mutual aid hub where people work collaboratively with one another to identify and meet their needs. Yeager Declaration at 2.

3.7   The only interruption to the near-continuous political activity and survival need work occurring at the Cal Anderson protest encampment over the past five plus months were approximately four occasions when Defendant City sent armed police officers into the

Yeager v. City of Seattle, Case No.
COMPLAINT – Page 3 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, WA 98201
T: (425) 259-4989

encampment wearing riot gear to forcibly evict residents, including Plaintiff. Yeager Declaration at 4.

3.8 Each time Defendant City forcibly evicted residents from the encampment resulted in police violence, including the use of chemical dispersants and physical violence, arrests, and the warrantless seizure and destruction of personal property. Yeager Declaration at 3.

3.9 Despite long ago declaring an "emergency" regarding the unmet needs of unhoused people, Defendant City continues to fail to provide resources sufficient to shelter Seattle's unhoused population.

3.10 Defendant City has, instead, created "Encampment Abatement Program" (the "Program") that wastes millions of dollars on non-housing expenditures, regularly violates the rights of unsheltered individuals, and does nothing to solve the underlying homeless crisis.

3.11 Defendant City's Program consists of prohibiting camping on virtually all public property; training and using police officers to force unhoused individuals to leave public property under the threat of arrest; destroying homeless people's belongings in a practice commonly known as "sweeps" or "cleanups;" fencing off public property to prevent public access; and arresting anyone found on such property on criminal trespass charges.

3.12 The most recent "point-in-time" count was completed in January 2020 (before the COVID public health crisis and resulting economic distress and job losses). At that time, there were 5,523 individuals who were classified as "unsheltered." Based on the results of that survey, 94% of those unhoused individuals would move inside if safe/affordable housing were available and 20% have never heard back from service providers or the City after requesting services.

3.13 In response to the COVID crisis, Defendant City announced the creation of 1,893 new shelter beds for unhoused individuals (a deficit of 3,630). However, the vast majority of

Yeager v. City of Seattle, Case No.
COMPLAINT – Page 4 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, Washington 98201
Phone (425) 259-4989 Fax (425) 259-5994

these beds were for COVID positive individuals or those recovering from COVID infections. *The total number of beds added for COVID negative individuals was 95.*

3.14    Defendant City is well-aware that it does not provide enough shelter space for its unhoused population. As it admitted, long before the exponential rise in Seattle's unhoused population over the past year, "City-funded shelters and sanctioned encampments are at or near capacity . . . " (https://homelessness.seattle.gov/mayor-durkan-announces-plan-to-increase-seattles-bridge-houseing-and-shelter-capacity-by-25-to-bring-more-people-inside-and-into-safer-places/). Before the pandemic, Defendant City's shelter vacancy rates were less than one percent on average.

3.15    The limited shelter space available often imposes restrictions that bar those most in need of shelter, including those who now living in Cal Anderson park. Many have limited hours, no right of return, no place to store belongings, do not allow couples or families to stay together, and do not allow pets.

3.16    Many shelters require occupants to show identification cards while Defendant City's forced evictions frequently result in the seizure and destruction of difficult-to-replace identification cards.

3.17    Shelters are also currently significantly reducing capacity to comply with the Center for Disease Control's standards for social distancing and the prevention of COVID spread.

3.18    In March 2020, Defendant City recognized that today's crisis was impending when it publicly announced that suspension of "all encampment removal operations." The announcement stated that exceptions would be made only in "extreme circumstances."

Yeager v. City of Seattle, Case No.
COMPLAINT – Page 5 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, Washington 98201
Phone (425) 259-4989 Fax (425) 259-5994

(https://homelessness.seattle.gov/covid-19-response-update-on-city-efforts-to-expand-shelter-hygiene-and-outreach-to-individuals-experiencing-homelessness/).

3.19 Without reference to "extreme circumstances," and for untenable, arbitrary, and capricious political calculations, the encampment at Cal Anderson has been swept multiple times.

**Past forced evictions**

3.20 Plaintiff was present for and residing at Cal Anderson during each of the sweeps occurring since the George Floyd uprising began.

3.21 Prior to each sweep, mutual aid groups and protest encampment residents were collaborating to meet the basic needs of residents in safer and higher-functioning manner than that available in other encampments.

3.22 After each sweep, these mutual aid services are disrupted for a period of time, property is lost and destroyed and the community is severely disrupted.

3.23 During some sweeps, Defendant City has gone to extraordinary lengths to close the park's public bathrooms and the Cal Anderson Shelter House ("Shelter House"), each of which were being put to good use providing for the basic needs of the unhoused community. Defendant City locked and welded shut the doors and windows on the bathroom and the Shelter House buildings, cutting off residents' and other park users' ability to use the bathroom or wash their hands, in the midst of a global pandemic. Defendant City has singled out the Cal Anderson protest encampment for this special treatment and has not taken similar actions to target and undermine the basic needs of other encampments.

3.24 The Shelter House featured showers, stations for residents to charge phones and a robust kitchen stocked and operated by mutual aid workers. Hot food was available at almost all

*Yeager v. City of Seattle*, Case No.
COMPLAINT – Page 6 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, Washington 98201
Phone (425) 259-4989 Fax (425) 259-5994

times of day, as was bottled water for drinking. Community members donated goods and services, including personal protective equipment to residents.

3.25    Service providers frequently provided services at the Shelter House, providing residents had access to mental health professionals, substance abuse counseling, haircuts, and assistance with applying for public benefits.

3.26    During past sweeps, Seattle Parks and Recreation ("Parks") employees, accompanied by a large contingent of Defendant City's police forces in full riot gear, arrived at the protest encampment with no notice whatsoever and with no warrant, ordered residents to depart with all belongings, and after a short period of time began arresting anyone and seizing and destroying any property found in the park.

3.27    Plaintiff watched from a distance as SPD officers slashed residents' tents open with knives, threw valuable personal property in the trash, ate residents' food, and forced residents to leave.

3.28    Arrests during these sweeps are often for "trespass" in a public park.

3.29    Though Plaintiff was able to save her tent from destruction, the sweeps took some of her personal and community property out, including valuable food preparation equipment, a generator, food donations, canopy tents. Plaintiffs efforts to get this property returned was unsuccessful.

3.30    Plaintiff, who lives with many other residents of the Cal Anderson protest encampment both before and after the September sweep, is not aware of *anyone* who got any belongings back after the September week.

**The impending forced eviction**

*Yeager v. City of Seattle*, Case No.
COMPLAINT – Page 7 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, Washington 98201
Phone: (425) 259-4989 Fax (425) 259-5994

3.31  On December 2, 2020, Mayor Jenny Durkan told a local news publication that her office was planning to "restore" Cal Anderson in the coming weeks. The mayor mentioned her concern for renters, businesses, and property after months of "demonstrations and police and protester clashes" at Cal Anderson park and the nearby East Precinct. The mayor said nothing about the unmet survival needs of unhoused people living in Cal Anderson.

3.32  Upon this announcement, mutual aid organizations began moving valuable equipment, supplies, and public-facing donation stations out of the park in order to prevent their seizure and destruction by Defendant City in another unannounced eviction, thereby depriving residents of important resources.

3.33  On the morning of December 14, 2020, Defendant City sent an intimidating phalanx of police officers clad in riot gear into Cal Anderson park to post a notice. Exhibit 1 ("Notice").

3.34  The Notice purports to be an "order" issued by Defendant City for yet another forced eviction of Cal Anderson to occur on or after Wednesday, December 16, 2020 at 7:30 a.m. Exhibit 1.

3.35  The Notice does not include language required by due process: it does not identify any individual whose property is subject to the order nor does it contain any information about a process or opportunity to dispute Defendant City's action. Exhibit 1.

3.36  The City's procedure for forced evictions of encampments (enacted in April, 2017), indicates that such notice will be posted "no fewer than" 72 hours before any such eviction on or at each tent or structure subject to removal, and that oral notice would be given to all individuals present at the time notices are posted.

Yeager v. City of Seattle, Case No.
COMPLAINT – Page 8 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, WA 98201
T: (425) 259-4989

3.37   In recent litigation, the U.S. District Court for the Western District of Washington relied upon Defendant City's representations to deny injunctive relief in a similar case. Specifically, Defendant claimed to uniformly comply with "no fewer than" 72-hour advance notice prior to any sweep. However, Defendant City failed to post any notice whatsoever for the four previous forced evictions of the Cal Anderson protest encampment and posted the Notice less than 48-hours before the indicated deadline.

3.38   The Notice asserts a public health and safety rationale for the impending forced eviction:

> *Materials in this area are an obstruction of the intended use of this property, are in a hazardous location or present a hazard. This is not an authorized area for storage or shelter.*

However, Defendant City's actions toward the protest encampment have exacerbated the public health and safety risks posed by the protest encampment. If the unhoused people living in Cal Anderson (and parks all across Seattle) pose any public health risks, forced eviction by Defendant City's will only displace those risks onto other places without substantively addressing any of the root causes of homelessness, while increasing the risks faced by the unhoused people themselves.

3.39   Defendant City has singled out the Cal Anderson protest encampment for forced eviction due to the content and viewpoint of political messages and organizing expressed there. While many other encampments across Seattle obstruct *"intended use of the property, are in a hazardous location, or present a hazard,"* Defendant City is only taking this extraordinary enforcement action in the middle of a pandemic against the protest encampment at Cal Anderson.

*Yeager v. City of Seattle*, Case No.
COMPLAINT – Page 9 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, Washington 98201
Phone (425) 259-4989; Fax (425) 259-5994

3.40    Having announced her intention to not run for reelection, and presumably preparing to depart Seattle for Washington DC to take an appointed position with the incoming Biden administration, Defendant City's executive, Jennifer Durkan, has publicly called the plan to forcibly evict Cal Anderson "urgent." Without taking action against other less-symbolically important and less-politically active encampments around Seattle, Defendant City has demonstrated its intent to discriminate against the Cal Anderson protest encampment based upon its political activity and content of its speech.

3.41    The Notice also claims to provide a process for returning property seized during the impending forced eviction. However, Defendant City's pattern and practice during the four previous evictions of the Cal Anderson protest encampment is not to catalog, preserve, or return the personal property seized during such forced evictions, but rather to destroy and discard such property with impunity.

3.42    Plaintiff has been unable to find any individual forcibly evicted from Cal Anderson (or anywhere else) in 2020 (or at any other time) who has had any piece of personal property returned by Defendant City.

3.43    According to the City's website, the warehouse location where the confiscated belongings will be taken is "temporarily closed," likely due to the COVID crisis.

3.44    The on-going COVID-19 pandemic has made all of these consequences of Defendant City's determined course of action more dangerous and irrational.

3.45    The impending forced eviction is contrary to CDC guidance, which states:

> **_If individual housing options are not available, allow people who are living unsheltered or in encampments to remain where they are_**. *Clearing encampments can cause people to disperse throughout the community and break*

Yeager v. City of Seattle, Case No.
COMPLAINT – Page 10 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, WA 98201
Phone (425) 259-4989 Fax (425) 259-5994
T: (425) 259-4989

connections with service providers. *This increases the potential for infectious disease spread.*

...

**Ensure nearby restroom facilities have functional water taps**, are **stocked with hand hygiene materials** *(soap, drying materials) and bath tissue,* **and remain open to people experiencing homelessness** *24 hours per day.*

**If toilets or handwashing facilities are not available nearby, assist with providing access to portable latrines** *with handwashing facilities for encampments of more than 10 people. These facilities should be equipped with hand sanitizer (containing at least 60% alcohol).*

**EXHIBIT CDC GUIDANCE.** The City has not provided portable latrines to replace the facilities that it took away from the protest encampment residents.

    3.46    Rather than comply with these national standards promulgated by public health experts at the CDC, Defendant City has repeatedly and intentionally violated it.

    3.47    Forcible eviction of the protest encampment at Cal Anderson will cause irreparable harm to Plaintiff and other similarly situated persons, including the chilling of political speech, destruction of personal property, loss of access to survival resources, disruption of assembly, increased danger of exposure to COVID-19, and other consequences.

## IV.  CLAIMS

    4.1    Statements of fact in paragraphs 3.1–3.47 above are hereby re-incorporated as if fully stated herein for purposes of each claim below.

### FIRST CAUSE OF ACTION
(Federal Law Claim – Violation 42 U.S.C. § 1983)

    4.2    By virtue of the facts set forth above, Defendant City is liable to Plaintiff for compensatory and punitive damages for a pattern or practice that foreseeably caused a deprivation of Plaintiff's civil right to be free from threats of retaliation and unlawful eviction for

*Yeager v. City of Seattle*, Case No.
COMPLAINT – Page 11 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, Washington 98201
T: (425) 259-4989

the expression of protected speech and assembly, as guaranteed by the First and Fourteenth Amendments to the Constitution and U.S.C. § 1983.

### SECOND CAUSE OF ACTION
(Federal Law Claim – Violation 42 U.S.C. § 1983)

4.3     By virtue of the facts set forth above, Defendant City is liable to Plaintiff for compensatory and punitive damages for a pattern or practice that foreseeably caused a deprivation of Plaintiff's civil right to be free from unreasonable search and seizure of person and property, as guaranteed by the Fourth and Fourteenth Amendments to the Constitution and U.S.C. § 1983.

### THIRD CAUSE OF ACTION
(Federal Law Claim – Violation 42 U.S.C. § 1983)

4.4     By virtue of the facts set forth above, Defendant City is liable to Plaintiff for compensatory and punitive damages for a pattern or practice that foreseeably caused a deprivation of Plaintiff's civil right to be free from the taking of private property without just compensation and due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the Constitution and U.S.C. § 1983.

### V.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests relief against Defendants as follows:

5.1     Temporary and preliminary injunctive relief from the threat of action on the Notice (Exhibit 1) or any other substantially similar attempt by Defendants to forcibly evict Plaintiff and the protest encampment from the park at least until the CDC rescinds its guidance;

5.2     General and special damages; including pain and suffering and compensation for wrongful incarceration pursuant to 42 U.S.C. §§ 1983 and 1988 and any applicable Washington law;

Yeager v. City of Seattle, Case No.
COMPLAINT – Page 12 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, Washington 98201
Phone (425) 259-4989 Fax (425) 259-5994

5.3 Plaintiffs reasonable attorney's fees and costs, under 42 U.S.C. § 1988 and to the extent otherwise permitted by law; and

5.4 Such other relief as the Court may deem just and equitable.

DATED this 16th day of December, 2020.

        MAZZONE LAW FIRM, PLLC
        Attorney for Plaintiff
        By: *s/Braden Pence*
        Braden Pence, WSBA #43495
        bradenp@mazzonelaw.com
        3002 Colby Ave., Ste. 302
        Everett, WA 98201

*Yeager v. City of Seattle*, Case No.
COMPLAINT – Page 13 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
Everett, Washington 98201
Phone (425) 259-4989; Fax (425) 259-5994


## CERTIFICATE OF SERVICE

I hereby certify that on the December 16, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) and persons of record. I hereby certify that I have served all non CM/ECF participants via United States Postal Service.

s/ Elizabeth Crafton

Elizabeth Crafton
Paralegal
Mazzone Law Firm, PLLC
3002 Colby Avenue, Suite 302
Everett, WA 98201
425-259-4989 (voice)
425-259-5994 (fax)
lizc@mazzonelaw.com

*Yeager v. City of Seattle*, Case No.
COMPLAINT – Page 14 of 13

MAZZONE LAW FIRM, PLLC
3002 Colby Avenue, Suite 302
EVERETT, WA 98201
Phone (425) 259-4989, Fax (425) 259-5994
T: (425) 259-4989

# EXHIBIT 1

DATE of NOTICE: __/__/20


# City of Seattle

# NOTICE/AVISO

## ORDER TO REMOVE ALL PERSONAL PROPERTY
## ORDEN DE RETIRAR TODOS LOS BIENES PERSONALES

| AS OF/ DESDE | TIME/ HORA | LOCATION/ UBICACIÓN |
|---|---|---|
| 12/16/20 | 7:30 am | Cal Anderson Park |

Materials in this area are an obstruction of the intended use of this property, are in a hazardous location or present a hazard. This is not an authorized area for storage or shelter. Any materials left here will be removed by the City on or after the date and time posted above, and belongings found by the City and authorized for storage will be kept for 70 days at no charge. / Los materiales en esta zona son un obstáculo para el uso previsto de esta propiedad, están en un lugar peligroso o representan un peligro. Esta no es una zona autorizada para almacenamiento o refugio. A partir de la fecha y hora publicadas anteriormente, cualquier material que se deje aquí será retirado por la Ciudad, y las pertenencias encontradas por la Ciudad y autorizadas para el almacenamiento se guardarán durante 70 días sin costo alguno.

| TO RECOVER OR ASK ABOUT STORAGE OF BELONGINGS CALL: / PARA RECUPERAR SUS PERTENENCIAS, LLAME AL: | 206-459-9949 |
|---|---|

The City will deliver stored belongings to you. Belongings are stored at: 3807 2nd Ave S / La Ciudad le entregará las pertenencias almacenadas. Las pertenencias se almacenan en: 3807 2nd Ave S.

## FOR OUTREACH AND HOUSING SUPPORT CALL:
para asistencia sobre contactos con la comunidad y sobre la vivienda, llame al:
### 211 or 206-461-3222

Translated-Spanish-2017-TLE