1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ADA YEAGER, an individual,

        Plaintiff,

v.

THE CITY OF SEATTLE, a municipal
corporation,

        Defendant.

Case No.:

**DECLARATION OF PLAINTIFF
ADA YEAGER**

## **DECLARATION**

I, Ada Yeager, am the Plaintiff in this matter, am over the age of 18, and am competent to testify in court. I use she/her or they/them pronouns. I make the following declaration upon information and belief, that the following is true and correct to the best of my knowledge:

1.  On Monday, December 14 at approximately 8:00 a.m., a large number of armed riot police entered Cal Anderson park and posted a threat to evict me from the park the morning of December 16. A true and correct photograph of the threat is attached as Exhibit 1.

2.  I have lived at the protest encampment at Cal Anderson park since early June, 2020, nearly the beginning of the George Floyd uprising.

3.  The protest encampment is an important symbolic location for the movement and is the central organizing hub for the local movement that has been active ever since.

*Yeager v. City of Seattle*, Case No.
YEAGER DECLARATION – Page 1 of 7

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1   4.  The protest encampment has been the staging ground for daily marches, political

2   meetings, organizing, making art, growing food, and providing community-based solutions to

3   our medical and mental health care needs.

4   5.  We even set up a mail-box at the encampment where we receive mail, a huge asset for

5   unhoused people who need a return mailing address (especially during COVID) to apply for

6   public assistance and correspond with the Department of Licensing regarding identification

7   cards.

8   6.  I am unhoused.

9   7.  I have stayed at the protest encampment because it is safe and stable compared to other

10  encampments and there are many resources available, including non-profit assistance that is

11  much harder to find elsewhere. The Cal Anderson protest encampment is a community where

12  people take care of and feed each other.

13  8.  I participate in and appreciate free speech activities at the park that are critical of the

14  Seattle police and local government.

15  9.  The park is "closed" in only a technical sense. In fact, hundreds of people are in the park

16  every day, including walking their dogs and playing on the fields. Until recently, approximately

17  50 people were living in the park, but that number shrunk to approximately 40 people after the

18  City posted an order on Monday, December 14, threatening to sweep us.

19  10. Some groups, like the Capitol Hill Community Center, that were providing food, sanitary

20  supplies, and other survival needs have closed their operations to avoid losing expensive

21  equipment to the threatened sweep, making things harder for us.

22  11. I have been present at the protest encampment for four past sweeps. On each occasion,

23  approximately 100-150 armed police contacted our tents and ordered us to grab all of our

24

*Yeager v. City of Seattle*, Case No.
YEAGER DECLARATION – Page 2 of 7

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1  belongings and get out of the park immediately. They then seized and/or destroyed all property

2  still in the park (belonging to those who did not or could not comply in time or who were

3  happened to be away from the encampment at the time, or who ran away in fear when they saw

4  the police). While seizing and destroying property, the police would pepper spray and arrest

5  anyone who stayed.

6      12. We usually had about 1-hour notice between our first inkling that a sweep was happening

7  and when police would start taking property and making arrests, never more than 2 hours. We

8  never received written notice before December 14.

9      13. In early July, police swept the entire "CHOP" area, including the park. They were

10 particularly aggressive and impatient that day. They showed up early in the morning, told

11 everyone to pack up and leave, and within minutes started advancing through the park in a riot

12 line. If you did not get your stuff and yourself out of the way by the time the line reached you,

13 you would be pepper sprayed, arrested, and all of your belongings would be taken and/or

14 destroyed.

15     14. On each occasion when I have been swept, I was able to get my personal tent out of the

16 way and would watch from a distance as officers seized and destroyed property and arrested

17 others.

18     15. I saw police destroy tents by slashing them open with knives.

19     16. I saw police and parks employees eating food donated to us and prepared by us.

20     17. I also saw police throwing our food into the garbage.

21     18. I saw police throw perfectly good tents and other property into the garbage.

22     19. I saw police destroy art we had made.

23

24

*Yeager v. City of Seattle*, Case No.
YEAGER DECLARATION – Page 3 of 7

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

20. I understand that police destroyed thousands of dollars-worth of medical supplies and equipment that was stored in the medical tents.

21. Though I have been able to get my personal tent out of the way in time, I lost other personal and communal property including a generator, valuable food preparation equipment, and canopy tents.

22. I made efforts to get this property back. I called the indicated phone number and accurately described the seized property. I was told that they did not have anything matching my description. I never got any of my property back.

23. I lived and spent time at Cal Anderson for months, before, during, and after each of the sweeps, and have met and talked to hundreds of people who have been through the park during that time. We regularly talk about the sweeps and loss of property. I have literally never met or heard of anyone who has ever gotten a single piece of property back after a sweep.

24. After each sweep, I returned to the protest encampment. Many others did as well, but some did not. Each sweep is costly, stressful, expensive, and disruptive. It takes time and effort to rebuild trust networks that keep us going.

25. Police are a negative influence in the lives of unhoused people. They are a daily, near constant threat. They harass us and treat us as less than human. The anti-police politics expressed at the protest encampment makes me feel much safer because police are not welcome in the park.

26. I have been contacted by non-profit outreach-workers while staying at the protest encampment. They are nice. They help with issues like getting a phone, harm reduction medical equipment, and sometimes food. Rarely they have housing vouchers, but they never have enough for everyone. Even they express frustration with the lack of resources they are given.

*Yeager v. City of Seattle*, Case No.
YEAGER DECLARATION – Page 4 of 7

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1     27. A few months ago, I had a scheduled appointment with a worker from LIHI (Low Income

2    Housing Institute) about getting into housing. Coincidentally, the police swept the protest

3    encampment that day, so the meeting never happened.

4     28. I have only ever had contact with anyone on the "Navigation Team" during a sweep, so

5    dealing with them involves dealing with the police. They seem to identify with the police and are

6    not nice to us. It used to be that we had to go through the Navigation team to get referrals. Their

7    resources came with a lot of stipulations that people living in Cal Anderson cannot meet. They

8    were pretty useless.

9     29. I am willing to leave the protest encampment if I had safe housing. I recently had another

10   appointment with LIHI recently and it sounds like in a few weeks or a few months I might be

11   able to get into a tiny house. It would be so nice to get off the street, to have a shower, and a

12   bathroom.

13    30. There have been isolated incidents were distressed people have yelled at park workers,

14   but generally speaking the protest encampment does not object to the presence of park workers.

15    31. We treat people who are having mental health crises with caution but care, we try to help

16   them. When police are around, mentally ill people get roughed up.

17    32. All of the struggles that houseless people face have been made worse by the COVID

18   pandemic. Sweeps can be a super-spreader event. Many of the police I have seen at sweeps

19   (especially over the summer) either didn't wear a mask at all, or didn't wear it over their nose

20   and mouth.

21    33. We really need each other right now to just survive. Displacing us right now, in the

22   middle of the pandemic, as the weather gets darker, rainier, and cold colder is just cruel and

23   inhumane. Sweeping us right now means taking away our homes and belongings at the

24

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1   beginning of winter; it means sending the police in to chase us away and beat some of us; and it

2   means arresting and putting some of us in jail in the middle of a pandemic. It will do nothing to

3   help us get housing. It will just cause more irreparable harm to our community and disrupt the

4   relationships and resources that keep us going.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

*Yeager v. City of Seattle*, Case No.
YEAGER DECLARATION – Page 6 of 7

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

I certify and declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed in at Seattle, Washington this 15th 14th day of December, 2020.

_____

Ada Yeager

# EXHIBIT 1

DATE of NOTICE [illegible]/20

 City of Seattle

# NOTICE/AVISO

## ORDER TO REMOVE ALL PERSONAL PROPERTY
## ORDEN DE RETIRAR TODOS LOS BIENES PERSONALES

| AS OF/ DESDE | TIME/ HORA | LOCATION/ UBICACIÓN |
|---|---|---|
| 12/16/20 | 7:30 am | Cal Anderson Park |

Materials in this area are an obstruction of the intended use of this property, are in a hazardous location or present a hazard. This is not an authorized area for storage or shelter. Any materials left here will be removed by the City on or after the date and time posted above, and belongings found by the City and authorized for storage will be kept for 70 days at no charge. / Los materiales en esta zona son un obstáculo para el uso previsto de esta propiedad, están en un lugar peligroso o representan un peligro. Esta no es una zona autorizada para almacenamiento o refugio. A partir de la fecha y hora publicadas anteriormente, cualquier material que se deje aquí será retirado por la Ciudad, y las pertenencias encontradas por la Ciudad y autorizadas para el almacenamiento se guardarán durante 70 días sin costo alguno.

| TO RECOVER OR ASK ABOUT STORAGE OF BELONGINGS CALL: / PARA RECUPERAR SUS PERTENENCIAS, LLAME AL: | 206-459-9949 |
|---|---|

The City will deliver stored belongings to you. Belongings are stored at: 3807 2ⁿᵈ Ave S / La Ciudad le entregará las pertenencias almacenadas. Las pertenencias se almacenan en: 3807 2ⁿᵈ Ave S.

## FOR OUTREACH AND HOUSING SUPPORT CALL:
Para asistencia sobre contactos con la comunidad y sobre la vivienda, llame al:

## 211 or 206-461-3222

Translated-Spansih-2017-TLE