1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

ADA YEAGER, an individual,

9

Plaintiff,

10

v.

11

THE CITY OF SEATTLE, a municipal
corporation,

12

Defendant.

Case No.:  2:20-cv-01813

**PLAINTIFF'S MOTION FOR**
***EMERGENCY* TEMPORARY**
**RESTRAINING ORDER AND**
**PRELIMINARY INJUNCTION**

13
14

## **INTRODUCTION**

15

Plaintiff seeks an emergency temporary restraining order and preliminary injunction

16

prohibiting Defendant from executing its pattern and practice of forcible eviction against

17

Plaintiff and similarly situated unhoused persons living in Cal Anderson park by displacing them

18

and seizing and destroying their property in violation of the U.S. Constitution and CDC

19

standards in the middle of global pandemic and public health crisis.

20

## **RELIEF REQUESTED**

Plaintiff respectfully requests the Court to 1) hear this Motion on an **emergency** *ex parte*

21

basis, 2) temporarily and preliminarily restrain Defendant from enforcing Exhibit 1, an "order to

22

remove" persons and property from Cal Anderson park, and 3) schedule a hearing on a

23

preliminary injunction.

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 1 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

## **FACTUAL BACKGROUND**

I provide this recitation of neutral and reliable facts based upon the best available knowledge, information, and ability.

1. On Monday, December 14, 2020, the City of Seattle posted a notice in Cal Anderson park indicating the intent to forcibly evict an encampment of unhoused people who have continuously living in the park since at least June.

2. Exhibit 1 indicates that "sweep" will occur at or anytime "after" 7:30 a.m. this morning, December 16, 2020.

3. Since the notice was posted, many housed and unhoused people have continued to flock to the encampment, helping unhoused people who want to leave in the face of the threatened eviction do so, building barricades to defend against police violence when the sweep happens, continuing to provide community-based survival needs for unhoused people, and continuing the robust political organizing and activism that has been a defining characteristic of the park since the beginning of the George Floyd uprising.

4. Presently, there are approximately 50 unhoused people living in the park, including Plaintiff.

5. Plaintiff is an unhoused individual who has lived outside on public property continuously in Cal Anderson Park ("Cal Anderson") in Seattle since June 2020.

6. In addition to the 50 residents, as of this writing there are approximately 200 civilians are in and around the barricades prepared to defend the encampment from the threatened eviction. Over the past 12 hours, multiple police vehicles

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 2 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

have been circling the park, this morning with lights and sirens engaged, taunting

and sarcastically blowing kisses to people on the street.

7. The proposed sweep is in clear violation of the Center for Disease Control's

standards for the treatment of unhoused people during the still wildly out-of-

control COVID pandemic.

8.  Defendant fails to provide sufficient shelter space to meet the needs of Seattle's

unhoused population.

9. Defendant has taken active, extraordinary measures to obstruct access to the

park's restrooms, sanitation infrastructure, running water, and electricity,

including by welding steel plates.

10. Defendant has taken active, extraordinary measures to evict the encampment over

the past six months, including repeated forcible removal of all persons and

property, each time without providing adequate notice and an opportunity to

respond, effectuating warrantless seizures and wanton destruction of property, and

resulting in police use of force and arrests.

## **AURTHORITY AND ARGUMENT**

The "standard for issuing a temporary restraining order is essentially the same as that for

issuing a preliminary injunction." *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co., Inc.*,

240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must

establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable

harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4]

that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555

U.S. 7, 21, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Plaintiffs are not required to show that they

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 3 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1  *will* succeed on the merits, only that they are "likely" to prevail. At a minimum, they must show

2  "serious questions going to the merits[,]" that the "balance of hardships tips sharply in [their]

3  favor, and the other two *Winter* factors are satisfied. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709

4  F.3d 1281, 1291 (9th Cir. 2013) (internal quotation marks omitted). All four factors are met here.

5      **A.  Plaintiff is likely to succeed because the proposed sweep violates the Federal and**

6          **Washington State Constitutions**

7          **i.**    **The proposed sweep violates the Fourth Amendment**

8      The Fourth Amendment of the U.S. Constitution "protects the right of the people to be

9  secure in their persons, houses, papers and effect, against unreasonable seizures and searches."

10  U.S. Const., Amend. IV. A "seizure" under the Fourth Amendment occurs "where there is some

11  meaningful interference with an individual's possessory interest in that property." *Soldal v. Cook*

12  *County Ill.*, 506 U.S. 56, 63 (1992). A seizure without a warrant is "per se unreasonable. The

13  Government bears the burden of showing that a warrantless search or seizure falls within an

14  exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703

15  F.3d 1135, 1141 (9th Cir. 2012). And even if a search or seizure is lawful at its inception, the

16  seizure "can nevertheless violate the Fourth Amendment because its manner of execution

17  unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on

18  'unreasonable seizures.'" *United States v. Jacobsen*, 466 U.S.  18 109, 124-25 (1984). See also

19  *Lavan*, 693 F.3d at 1030.

20      Article I, Section 7 of the Washington State Constitution provides that "No person shall

21  be disturbed in his private affairs, or his home invaded, without authority of law." Both the

22  Fourth Amendment and Article I, section 7 of the Washington Constitution prohibit

23  unreasonable seizures. *State v. McLean*, 178 Wn. App. 236, 244 (2013). "Article I, section 7

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 4 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1    requires no less than the Fourth Amendment." *State v. Chesley*, 158 Wn. App. 36, 45 (2010),

2    review granted, case remanded, 174 Wn.2d 1012 (2012) (internal quotations omitted). In fact,

3    Washington courts have noted that "the broad language of article I, section 7 is more protective

4    than the Fourth Amendment to the United States Constitution." *State v. Lyons*, 174 Wn.2d 354,

5    359, n.1 (2012).

6            There should be no legal dispute that homeless individuals have a property interest in

7    their tents, blankets, tarps, medication, personal papers and other items, and that these enjoy state

8    and federal constitutional protection. This issue has already been resolved, and in *Lavan* the

9    Ninth Circuit foreclosed any argument that homeless individuals do not have a protectable

10   property interest in their belongings. *Lavan*, 693 F.3d at 1031. Therefore, the only question is

11   whether the summary destruction of Plaintiffs' property constitutes unreasonable seizures.

12   Existing case law and the circumstances surrounding the seizure and destruction compel a

13   finding that Plaintiffs are likely to succeed on this claim. The fact that the City has proposed

14   rules governing sweeps demonstrates that they recognize a need to follow some degree of

15   process before taking the belongings of unsheltered citizens. However, they have also

16   demonstrated time and again that they are not willing to follow the meager protections they have

17   put into place.

18           First, the destruction of homeless people's property is undoubtedly a deprivation that

19   triggers Fourth Amendment analysis. See *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th

20   Cir. 2005). And that deprivation—the wholesale destruction of plaintiffs' personal belongings—

21   is patently unreasonable. *Lavan*, 693 F.3d at 1030. In fact, in *Lavan*, the Circuit noted that the

22   City "almost certainly could not" even argue that the summary destruction of homeless people's

23   property under very similar circumstances was reasonable under the Fourth Amendment. *Id.*

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 5 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1    When the destruction occurs during Defendants' ongoing sweeps, the Defendants know

2  that the property is not abandoned—in fact, it is often property that Plaintiffs have had to leave

3  behind after demands by Defendants to vacate on little or no notice. There is no legitimate reason

4  for Defendants to seize and destroy the property of unhoused residents of the Cal Anderson

5  encampment without adequate notice *and opportunity to participate*, a warrant or probable

6  cause, or a meaningful way to reclaim seized property, especially during the middle of winter in

7  a pandemic. Neither can concern for the general health and safety of the community justify these

8  actions: the Ninth Circuit has soundly rejected these arguments. See *Lavan*, 797 F. Supp. 2d at

9  1015 (noting that the seizure of property "threatens the already precarious existence of homeless

10  individuals by posing health and safety hazards" and violated the Fourth Amendment, despite

11  "an inherent interest in keeping public areas clean and prosperous").

12                    **ii.       The proposed sweep violates the Fourteenth Amendment**

13    Under the Fourteenth Amendment, "No state shall . . . deprive any person of life, liberty,

14  or property, without due process of law." U.S. Const., Amend. XIV. To determine whether there

15  has been a due process violation, the Court follows a two-step analysis: first, it determines

16  whether there is a property interest encompassed within the protection of the due process clause,

17  and if there is, what process is due. *Propert v. District of Columbia*, 948 F.2d  22 23

18  1327 (D.C. Cir. 1991). Whether there is a protected property interest requires the court to look to

19  "existing rules or understandings that stem from an independent source such as state-law rules or

20  understandings." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Washington additionally

21  recognizes the right of ownership of personal property. "Possession of personal property is prima

22  facie proof of ownership and is presumptive evidence that the possession is rightful." *Merinella*

23  *v. Swartz*, 123 Wash. 521, 523, 212 P. 1052, 1053 (1923) (internal quotes omitted). Article I,

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 6 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

Section 3 of the Washington State Constitution provides the fundamental guarantee that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Tents, tarps, blankets, medication, and other items are property protected by the Fourteenth Amendment and the Washington State Constitution. See *Lavan*, 693 F.3d at 1032 (holding that the protections guaranteed by the Fourteenth Amendment attach "regardless of whether the property in question is an Escalade or an EDAR, a Cadillac or a cart"). In many instances, the volume of what is taken and destroyed constitutes almost everything the individual owns.

The second question is what process is due, which depends on a balance of factors outlined in *Mathews v. Eldridge*: "first, the private interest affected by the government action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 U.S. 319, 335. Defendants' policy and practice of destroying property without any process, and storing property without sufficient notice or procedures to ensure its return, ignores these clearly established legal standards.

The summary destruction of property, whether it is incident to an individual's removal, or when the individual is unable to move it during a sweep, suffers from the same constitutional infirmity—it affords no process by which the owner of the property can challenge its destruction before "the owner is finally deprived of a protected property interest." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982). Such state action is anathema to the concept of due process. "However weighty the governmental interest may be in a given case, the amount of process required can never be reduced to zero - that is, the government is never relieved of its

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 7 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1    duty to provide some notice and some opportunity to be heard prior to final deprivation of a

2    property interest." *Propert*, 948 F.2d at 1333 (citing *Logan*, 455 U.S. at 434).

3        Despite the "truism that some form of hearing is required before the owner is finally

4    deprived of a protected property interest," *Logan*, 455 U.S. at 433, and very clear instruction to

5    that effect from the Court in *Lavan* and the preceding cases, Defendants regularly destroy

6    property without any opportunity to challenge the basis for the destruction. That is what

7    happened to Plaintiff and other Cal Anderson encampment residents in September and that is

8    what will happen again this week without judicial intervention.

9        In *Lavan*, the Court made it explicitly clear that "the City is required to provide

10   procedural protections before permanently depriving [homeless individuals] of their

11   possessions." Id. at 1032. *Lavan* is consistent with numerous other cases, in which the Court

12   required due process to challenge the basis for destruction before the property was permanently

13   destroyed.41 As in *Lavan*, "the City's decision to forego any process before permanently

14   depriving [homeless individuals] of protected property interests is especially troubling given the

15   vulnerability of [the City of Seattle's] homeless residents." 693 F.3d at 1032.

16       In this application for a temporary restraining order, Plaintiffs seek only what *Lavan*

17   commands: an order prohibiting Defendants from seizing and summarily destroying homeless

18   people's property without probable cause and constitutionally adequate notice and opportunity to

19   be heard.  *Id.* at 1033. Plaintiffs do not seek to prevent Defendants from collecting actual garbage

20   or waste on public property. Plaintiffs simply ask that their constitutional rights not be violated in

21   the process.

22       The sign posted at Cal Anderson on December 14 provides inadequate notice, in violation

23   of the City's own policy, and does nothing to provide Plaintiff with an opportunity to be heard.

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 8 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1    The Defendants also violate Plaintiff's Due Process rights by providing no meaningful

2  notice or process to get back the few items they seize and store. Due process requires an

3  individual both "be given notice and an opportunity to be heard at a meaningful time and in a

4  meaningful manner." *Schneider*, 28 F.3d at 92. This process "must be tailored to the capacities

5  and circumstances of those who "must rely on the process." *Goldberg*, 397 U.S. at 268-69. For

6  the notice to satisfy due process, "[t]he notice must be of such nature as reasonably to convey the

7  required information." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

8    The owners of seized property are frequently given no notice where they can pick up

9  their property or even if property has been preserved. If they are given notice, the notice is

10 inaccurate and does not outline the process actually required to get their property back. The

11 process itself is convoluted and does not take into account any of the "capacities and

12 circumstances" of the parties, as the Defendants are required to do. *Goldberg*, 397 U.S. at  20

13 268-69. Taken together, the Defendants' policies are inadequate, given the serious deprivation to

14 plaintiffs. See *Eldridge*, 424 U.S. at 341.

15    First, "the nature of the interest . . . and the degree of potential deprivation that may be

16 created," is significant. *Eldridge*, 424 U.S. at 341. Assuming, that Defendant preserves some

17 property, these few remaining items are frequently the last remaining belongings an individual

18 has. See *Lavan*, 693 F.3d at 1032. See also *Memphis Light, Gas and Water Division v. Craft*, 436

19 U.S. 1, 17-18 (1974) (holding that a deprivation for even a short period of time can threaten

20 health and safety and constitutes a significant interest). Moreover, if, as here, the notice and

21 process for getting the property back is flawed, the individual will be permanently deprived of

22 these items, either because they are never actually able to find them, or because it simply takes

23 too long. Defendants' official policy requires property to be stored for 60 or 70 days. Yet,

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 9 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1   employees of Defendants estimate only 1 or 2 percent of it is actually retrieved; the rest is

2   thrown in the trash. (http://www.seattletimes.com/seattle-news/chaos-trash-and-tears-inside-

3   seattles-flawed-homeless) Therefore, the interest and the potential deprivation are significant.

4       The second *Eldridge* factor considers "the risk of an erroneous deprivation of such

5   interest through the procedures used, and the probable value, if any, of additional or substitute

6   procedural safeguards." *Eldridge*, 424 U.S. at 335. This factor requires the Court to weigh the

7   "fairness and reliability of the existing procedures." *Nozzi*, 806 F.3d at 1193. The Defendants'

8   procedures for getting property back after it taken is anything but fair and reliable. As a

9   preliminary matter, it is City officials, not the owners of the property, who sort through the

10   property and decide what to keep and what to throw away. Further, notice about how to get one's

11   property back is insufficient. "To be constitutionally adequate, notice must be reasonably

12   calculated under all circumstances, to apprise interested parties with due regard for the

13   practicalities and particularities of the case." *Nozzi*, 806 F.3d at 1194 (citing *Mullane*, 339 U.S. at

14   314) (internal quotations removed). The notice provided here fails this test. There is no

15   mechanism by which someone can challenge the taking of their property. The facility where

16   items deemed worthy of storage are kept is at 3807 Second Ave South, approximately an hour

17   and thirty-minute walk from downtown Seattle. According to the website for the storage facility,

18   it is temporarily closed due to COVID. One worker at the City's storage facility estimates that

19   only 1 or 2 percent of the materials stored are ever picked up, with the rest eventually thrown

20   out. (http://www.seattletimes.com/seattle-news/chaos-trash-and-tears-inside-seattles-flawed-

21   homeless sweeps/). These failures in notice and process render the deprivation of property,

22   whether temporarily or permanently, unconstitutional. See *Memphis Light, Gas and Water*

23   *Division v. Craft*, 436 U.S. 1 (1978) (holding that a utility company violated Plaintiffs' due

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 10 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1  process rights after Plaintiffs made "good faith efforts" to "straighten out the problem," but were

2  never notified of a process to resolve the issue and, despite their efforts, their service was

3  wrongfully terminated). This is particularly true for unhoused individuals who find their

4  belongings taken when they are temporarily or unable to physically move all of their property in

5  the limited amount of time Defendants provide. They, moreover, rarely have access to reliable

6  transportation or a charged cell phone, and frequently have mobility challenges. The failure to

7  "take account for the 'capacities and circumstances'" of the individuals who must traverse this

8  system renders an already unfair system unconstitutional. *Nozzi*, 806 F.3d at (quoting *Goldberg*,

9  397 U.S. at 268-69; *Memphis Light*, 436 U.S. at 14, n. 15).

10      Finally, the third *Eldridge* factor also weighs in favor of a due process violation. The

11  burden of providing adequate process, including immediate access to property and notice that

12  effectively spells out the process to get the property back, would be minimal, since the

13  Defendants have more than enough resources to return property to individuals, particularly when

14  balancing their rights and the interests at stake. See *Prophet*, 948 F.2d at 1335.

15          iii.     **The proposed sweep violates the First Amendment**

16      The right to free speech and peaceful assembly is guaranteed by the 1st Amendment to

17  the U.S. Constitution and Article I, Sections 5 and 7 of the Washington Constitution's

18  Declaration of Rights. Public parks are quintessential traditional public forums for the exercise of

19  political speech and assembly. *Hague v. CIO*, 307 U.S. 496, 515-16 (1939). Because of the

20  special status of traditional public fora in our constitutional form of government, "the

21  government must bear an extraordinarily heavy burden to regulate speech in such locales."

22  *NAACP Western Region v. City of Richmond*, 743 F.2d 1346, 1355 (9th Cir. 1984) (emphasis

23  added).

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 11 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1    Tents and structures are well-established as viable instruments of political speech, and

2    maintaining tents and temporary structures continuously have acknowledged speech value. See,

3    e.g., *Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984); *Students Against  6*

4    *Apartheid Coalition v. O'Neil*, 660 F.Supp. 333 (W.D. Va. 1987); *ACORN v. City of Tulsa*, 835

5    F.2d 735, 742 (10th Cir. 1987) (recognizing speech value of symbolic structures in parks);

6    *University of Utah Students Against Apartheid v. Peterson*, 649 S. Supp. 1200, 1204-1205 (D.

7    Utah 1986) (students maintained continuous presence with shanties over many months,

8    enhancing their expressive character). Two federal district courts have held that "tenting and

9    sleeping" in a public park as part of a political demonstration unquestionably is expressive

10   conduct implicating the protections of the First Amendment. *Occupy Minneapolis v. County of*

11   *Hennepin*, _____ F. Supp. 2d ___, 2011 WL 5878359, *4 (D. Minn. 2011) (sleeping and

12   overnight occupation of tents in a park was expressive conduct protected by the First

13   Amendment, though it could be regulated by a permit scheme that functioned as a valid time

14   place and manner restriction); *Occupy Fort Myers v. City of Fort Myers*, _____ F. Supp. 2d ___,

15   2011 WL 5554034, *5 (M.D. Florida 2011) (same).

16   Cal Anderson park has been the undisputable hub of the recent civil rights uprising in the

17   wake of the death of George Floyd. From nightly protests at the East Precinct, to the creation of

18   the Capitol Hill Autonomous Zone, to the current nightly meet-ups in the park, Cal Anderson is

19   the epicenter of the movement in Seattle. Many of the unhoused residents of the park are also

20   activists. The park is filled with political signs and slogans. Mutual Aid stations that have sprung

21   up at the park are also an essential component of the current movement

22   (https://www.theverge.com/21377132/mutual-aid-solidarity-protests-food-assistance-police-

23   brutality).

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 12 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1    Defendant has obviously targeting the Cal Anderson encampment for special

2    enforcement. The City has forcibly evicted the encampment multiple times while leaving many

3    other encampments alone. The City has taken extraordinary measures to retaliate against this

4    particular encampment because of the content of the speech and political activity it supports,

5    much of which is very critical to the City. The threatened eviction is more likely about political

6    repression that it is about any desire to preserve public health because it violates the City's own

7    publicly-announced policy in response to the COVID crisis and CDC standards. Mayor Durkan's

8    public comments about the threatened eviction shows that Cal Anderson eviction policy is linked

9    to the barricades at the East Precinct and the still-on-going Black Lives Matter protests in an

10   interview with the Capitol Hill Blog (https://www.capitolhillseattle.com/2020/12/its-urgent-

11   mayor-says-launching-initiatives-to-open-cal-anderson-remove-east-precinct-wall-amid-

12   encampments-and-ongoing-protests/).

13       **iv.    The proposed sweep violates the Eighth Amendment**

14       In *Martin v. Boise*, 920 F.3d 584 (2019), the Ninth Circuit held that it was

15   unconstitutional for a local government to criminalize the act of survival. In that case, a local

16   government that failed to provide adequate shelter for its unhoused population attempted to

17   enforce criminal statutes targeting unhoused people living on public property. The court struck

18   down criminal statutes. The Ninth Circuit held the statutes unconstitutional.

19       Here, although the eviction action threatened by the City against Plaintiff and the protest

20   encampment at Cal Anderson does not take the immediate form of a criminal statute, experience

21   demonstrates that this is a distinction without a difference. The reality is that every past eviction

22   at Cal Anderson has involved police action, the use force, arrests, and booking unhoused people

23   into jail as a direct result of their providing for their own alternative housing on public property.

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 13 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

Past arrests have been based upon asserted probable cause for "trespassing" on public property. Thus, while the eviction is not based upon a criminal law, it nonetheless constitutes the pretense for enforcement of facially-neutral criminal laws, resulting in the same outcome: the criminalization of survival under a government that does not provide sufficient resources to allow survival. This is a clear violation of *Martin v. Boise*. Because the City does not provide sufficient resources to ensure that its unhoused population has access to shelter, it cannot take enforcement action against unhoused people when providing their own alternative housing on public property. Thus, Plaintiff is likely to prevail on the merits.

A.      **Plaintiffs and Similarly-Situated Individuals Have And Will Continue To Suffer Substantial Injury and Irreparable Harm As A Result of Defendants' Unlawful Acts**

Plaintiff's contacts with outreach workers has been disrupted by past sweeps. Plaintiff desires long-term housing and has attempted to find such accommodations without success. The City simply does not provide adequate resources to shelter its unhoused population, including Plaintiff. Of the two numbers listed on the City's notice, one is a general information line (211) and the other is for mental health crisis care and has nothing to do with housing. If the Cal Anderson encampment is swept on or "after" December 16, 2020, Plaintiff and other similarly situated class members will not be given housing, but instead will be displaced onto yet another encampment elsewhere in the City where they do not have relationships or connections. Plaintiff's past experience shows that all of their belongings will be seized and either immediately destroyed or thrown haphazardly and without adequate identification and cataloging into temporary storage before being destroyed. Nor does the Notice provide information about how to retrieve belongings that are placed into storage. By being forced to respond to the City's threat to evict, and even more so when they are evicted, Plaintiff, similarly-situated persons, and

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 14 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

their supporters have been placed at an increased danger of COVID infection. Plaintiff and others living at the park are essentially a COVID "pod" or family. They have well-ventilated outdoor space, use recommended masks, and are exposed to one another on a regular basis. By threatening to evict the encampment, the City has caused hundreds of additional people to come to the park. By evicting the encampment, the City will cause Plaintiff and others to be spread out far and wide across the city, increasing contacts with other encampments and the community. The park at Cal Anderson has also become a crucial hub of Seattle's free speech activity. Another forcible eviction will severely chill and disrupt on-going political expression and organizing activities. All of these issues constitute severe and irreparable harm that will and already have begun to result from the City's threatened eviction.

### i. Defendants have disregarded policies that protect plaintiffs from irreparable harm

The Defendant enacted "FAS 17-01" in April 2017, to formalize rules around encampment removals. The rules require, among other things, the City to offer alternative housing/shelter for encampment occupants, a daily list of open shelter beds, "***no fewer than 72-hours' notice***" before an encampment removal, oral notice to anyone present at the encampment, and notice on each tent or structure at the encampment. The Defendant followed none of these rules for past sweeps of the protest encampment at Cal Anderson. Despite posting notice *after* the sweep of a location where residents could recover their belongings, we have no indication that Plaintiff anyone else living at encampment were able to recover any personal property after any of these sweeps.

For the proposed sweep on December 16, 2020, the City provided fewer than 48-hours' notice. Notice was via two paper signs posted at the park. No notice was posted at individual

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 15 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1    tents and no oral notice was given. Plaintiff is aware that one or two people have been provided

2    with the opportunity to accept housing and have done so, but Plaintiff has not been offered

3    housing and it is a poorly kept secret that the City *does not provide adequate housing resources*

4    *for its homeless population.*

5            Absent the Court's intervention, Plaintiffs and members of the proposed class will

6    continue to suffer irreparable harm from the Defendants' policies and practices because they

7    violate their constitutional rights. "An alleged constitutional infringement will often alone

8    constitute irreparable harm." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997)

9    (internal citation omitted). "Unlike monetary injuries, constitutional violations cannot be

10   adequately remedied through damages and therefore generally constitute irreparable harm."

11   *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008), rev'd on other

12   grounds and remanded, 562 U.S. 134 (2011). No countervailing interest of the Defendants

13   outweighs the dire impact on Plaintiffs and members of the proposed class, who are unhoused

14   and live outside during even the most severe weather. The loss of essential possessions is

15   "devastating" and clearly constitutes irreparable harm. *Lavan*, 693 F.3d at 1032 (internal

16   citations omitted); *Lavan*, 79 F.Supp. 2d at 1019.

17           Plaintiff and other residents of the Cal Anderson encampment are doing their best to

18   survive during the most trying of circumstances – living unhoused in winter in the middle of a

19   global pandemic. Plaintiff's contacts with outreach workers has been disrupted by past sweeps.

20   Plaintiff desires long-term housing and has attempted to find such accommodations without

21   success. The City simply does not provide adequate resources to shelter its unhoused population,

22   including Plaintiff. Of the two numbers listed on the City's notice, one is a general information

23   line (211) and the other is for mental health crisis care and has nothing to do with housing. If the

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 16 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

Cal Anderson encampment is swept on or "after" December 16, 2020, Plaintiff and other similarly situated individuals will not be given housing, but instead will be displaced onto yet another encampment elsewhere in the City where they do not have relationships or connections. Plaintiff's past experience shows that all of their belongings will be seized and either immediately destroyed or thrown haphazardly and without adequate identification and cataloging into temporary storage before being destroyed. Nor does the Notice, Exhibit 1, provide information about how to retrieve belongings that are placed into storage. By being forced to respond to the City's threat to evict, and even more so when they are evicted, Plaintiff, similarly-situated persons, and their supporters have been placed at an increased danger of COVID infection. Plaintiff and others living at the park are essentially a COVID "pod" or family. They have well-ventilated outdoor space, use recommended masks, and are exposed to one another on a regular basis. By threatening to evict the encampment, the City has caused hundreds of additional people to come to the park. By evicting the encampment, the City will cause Plaintiff and others to be spread out far and wide across the city, increasing contacts with other encampments and the community. The park at Cal Anderson has also become a crucial hub of Seattle's free speech activity. Another forcible eviction will severely chill and disrupt on-going political expression and organizing activities. All of these issues constitute severe and irreparable harm that will and already have begun to result from the City's threatened eviction.

**B. The Balance of Equities is in the plaintiff's favor**

Where Plaintiffs show the likelihood of success on the merits and irreparable harm, "the balance of equities and public interest tip in favor of Plaintiffs." *Los Padres Forestwatch v. U.S. Forest Service*, 776 F. Supp. 2d 1042, 1052 (N.D. Cal. 2011). The more permanent Plaintiffs' harm if relief is denied and the more temporary Defendant's harm if it is not, the greater the

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 17 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1  balance tips toward Plaintiffs. *League of Wilderness Defenders*, 752 F.3d at 765. The District

2  Court in *Lavan* agreed that the balance of equity tipped in Plaintiffs' favor: "The City's interest

3  in clean streets is outweighed by Plaintiffs' interest in maintaining the few necessary personal

4  belongings they might have." *Lavan*, 797 F. Supp. 2d at 1019-20.

5        **C. Temporary Restraining Order is in the Public Interest**

6        The fourth element considers how an injunction will impact non-parties. *League of*

7  *Wilderness Defenders*, 752 F.3d at 766. This prong, too, is in Plaintiffs' favor since "[i]t is

8  always in the public's interest to prevent the violation of a party's constitutional rights", and all

9  the more so when the violation is being done in the name of their own government. *Melendres v.*

10  *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). The unhoused individuals affected by the

11  Defendants' unlawful acts are part of the public and are directly harmed by the sweeps. Further,

12  the proposed sweep will drive a community of individuals that have had contact with one another

13  into spaces with additional people – shelters, other encampments, the streets. The sweep itself

14  will bring the residents of the encampment into contact with Parks employees and police

15  officers. They will have to have further contact with City employees if they are to get their

16  belongings back at some future point. This is the exact situation that the CDC was concerned

17  about when issuing guidance to allow encampments of unsheltered individuals to remain intact

18  during COVID. The City itself recognized these concerns when it indicated in March that it

19  would not sweep homeless encampments during the pandemic. In the midst of a surging

20  pandemic, it is in the best interest of the public for the community at Cal Anderson to remain in

21  place.

22        E.    **A Temporary Restraining Order Should Apply to the entire Cal Anderson**

23  **encampment**

24

1    An injunction may extend beyond the named plaintiffs if it "is necessary to give

2  prevailing parties the relief to which they are entitled." *Easyriders Freedom F.I.G.H.T. v.*

3  *Hannigan*, 92 F.3d 1486, 1501B02 (9th Cir. 1996) (internal citation and emphasis omitted);

4  "Class-wide relief may be appropriate even in an individual action." *Bresgal v. Brock*, 843 F.2d

5  1163, 1171 (9th Cir. 1987) (noting that "The district court has the power to order nationwide

6  relief where it is required."). Defendants seize and discard property of all individuals present at a

7  location during a sweep. It is not possible, practical, or effective to limit the relief to only certain

8  individuals. The injunction must extend to all unhoused people currently living in the Cal

9  Anderson encampment. See, e.g., *Lavan*, 693 F.3d at 1026, 1033 (injunction applies to "all

10  unabandoned property on Skid Row" because "it would likely be impossible for the City to

11  determine whose property is being confiscated").

12    **F.    The Requirement of a Bond Should be Waived**

13    Federal courts may exercise their discretion under FRCP 65(c) to waive the bond

14  requirements in suits to enforce important federal rights of public interest. *Barahona-Gomez v.*

15  *Reno*, 167 f.3d 1228, 1237 (9th Cir. 1999); *Cal. ex rel. Van de Kamp v. Tahoe Reg'l Planning*

16  *Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985) (no bond required for non profit group). This Court

17  should do so here.

18    **IV. CONCLUSION**

19    This action challenges a proposed sweep of an established encampment of unsheltered

20  citizens living in Cal Anderson in the middle of a raging pandemic – flinging them far and wide

21  into a community that does not have sufficient shelter or housing for them. This sweep will

22  deprive them of their possession, likely permanently. For the aforementioned reasons, Plaintiffs

23

24

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1   and members of the proposed class are entitled to injunctive relief to prevent their property from

2   being destroyed. A proposed order is submitted herewith.

3

4

        RESPECTFULLY SUBMITTED this 16th day of December, 2020.

5

6                   MAZZONE LAW FIRM, PLLC
                Attorney for Plaintiff

7                   By: *s/Braden Pence*
                Braden Pence, WSBA #43495

8                   bradenp@mazzonelaw.com
                3002 Colby Ave., Ste. 302

9                   Everett, WA 98201

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

*Yeager v. City of Seattle*, Case No.
MOTION FOR TRO – Page 20 of 20

MAZZONE LAW FIRM, PLLC
3002 COLBY AVENUE, SUITE 302
EVERETT, WA 98201
T: (425) 259-4989

1

**CERTIFICATE OF SERVICE**

2   I hereby certify that on the December 16, 2020, I electronically filed the foregoing with the Clerk

3   of the Court using the CM/ECF system which will send notification of such filing to the

    attorney(s) and persons of record.  I hereby certify that I have served all non CM/ECF

4   participants via United States Postal Service.

5

6                                          s/ Elizabeth Crafton

7                                          Elizabeth Crafton
                                           Paralegal
8                                          Mazzone Law Firm, PLLC
                                           3002Colby Avenue, Suite 302
9                                          Everett, WA 98201
                                           425-259-4989 (voice)
10                                         425-259-5994  (fax)
                                           lizc@mazzonelaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT 1

DATE of NOTICE _____ /20

 **City of Seattle**

# NOTICE/AVISO

## ORDER TO REMOVE ALL PERSONAL PROPERTY
### ORDEN DE RETIRAR TODOS LOS BIENES PERSONALES

| AS OF/ DESDE | TIME/ HORA | LOCATION/ UBICACIÓN |
|---|---|---|
| 12/16/20 | 7:30 am | Cal Anderson Park |

Materials in this area are an obstruction of the intended use of this property, are in a hazardous location or present a hazard. This is not an authorized area for storage or shelter. Any materials left here will be removed by the City on or after the date and time posted above, and belongings found by the City and authorized for storage will be kept for 70 days at no charge. / Los materiales en esta zona son un obstáculo para el uso previsto de esta propiedad, están en un lugar peligroso o representan un peligro. Esta no es una zona autorizada para almacenamiento o refugio. A partir de la fecha y hora publicadas anteriormente, cualquier material que se deje aquí será retirado por la Ciudad, y las pertenencias encontradas por la Ciudad y autorizadas para el almacenamiento se guardarán durante 70 días sin costo alguno.

| TO RECOVER OR ASK ABOUT STORAGE OF BELONGINGS CALL: / PARA RECUPERAR SUS PERTENENCIAS, LLAME AL: | **206-459-9949** |
|---|---|

The City will deliver stored belongings to you. Belongings are stored at: 3807 2nd Ave S / La Ciudad le entregará las pertenencias almacenadas. Las pertenencias se almacenan en: 3807 2nd Ave S.

## FOR OUTREACH AND HOUSING SUPPORT CALL:
para asistencia sobre contactos con la comunidad y sobre la vivienda, llame al:

### 211 or 206-461-3222

Translated-Spanish-2017-TLe